# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **ABEL FENCE, LLC,** | ) | |
| Appellant-Below, | ) | |
| Petitioner | ) | **C.A. No. N21A-11-003 FJJ** |
| | ) | |
| v. | ) | CITATION IN CERTIORARI |
| | ) | |
| **DEPARTMENT OF LABOR,** | ) | DECISION OF THE DELAWARE |
| **OFFICE OF LABOR LAW** | ) | SECRETARY OF LABOR |
| **ENFORCEMENT,** | ) | DATED OCTOBER 18, 2021 |
| Appellee-Below, | ) | |
| Respondent. | ) | CASE NO. 2021-02-18-001 |

## ORDER ON PETITIONER'S REQUEST
## FOR ISSUANCE OF A WRIT

Decision: **GRANTED**
Submitted: June 10, 2022
Decided:  June 15, 2022

Petitioner, Abel Fence, LLC ("Abel") has petitioned this Court for a Writ of Certiorari seeking review of the decision of the Department of Labor Secretary, Karryl Hubbard, upholding a labor law enforcement officer's determination that nine Abel employees who were installing fencing at the Plummer Community Corrections Center should have been paid the prevailing wage for ironworkers instead of the prevailing wage for laborers. This Court's certiorari review is limited to review of the record to determine whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly. For the reasons that follow, this Court REVERSES and REMANDS Secretary Hubbard's decision.

1

BACKGROUND

Abel entered into a contract with the State of Delaware for "Plummer Community Corrections Center – Fence Replacement Phase 2" for "the replacement of the perimeter security fence system along the East and South East perimeter on the side."[1] The contract required Abel to pay its employees the prevailing wage for working on the project.

Michael Hopkins ("Hopkins"), a labor law enforcement officer with the Office of Labor Law Enforcement ("OLLE"), conducted a prevailing wage inspection at Abel's site. His inspection revealed that Abel had classified and paid nine of its employees who were installing security fencing at the laborer prevailing wage rate rather than at the ironworkers prevailing wage. The relevant portions of the Delaware Prevailing Wage Law Booklet with respect to the classifications of "laborers" and "ironworkers" are as follows:

> "**Laborers**" are defined as those workers who "attach[] and assist[] in the installation of … metal fencing (including barbed wire and woven wire, excluding chain link and security fencing."

> "**Ironworkers**" are defined as those workers who "install chain link fences."

---

[1] *See* Appendix to Petitioner Abel Fence, LLC Opening Brief at 7.

Hopkins began a prevailing wage investigation into Abel's wage classifications at the site. Hopkins conducted interviews with Abel employees, evaluated work performed, reviewed Abel's daily logs and certified sworn payroll, and reviewed the definitions of "laborer" and "ironworker."

Letters were exchanged between Hopkins and Abel about a dispute over the classification of the employees working on the installation of the fence. Abel's position was that the proper classification was laborers because the workers were not installing a chain link fence – the type of work which requires the classification of workers as ironworkers. Hopkins disagreed, reasoning that based on the tasks actually observed during the onsite inspection, the workers installing security fencing should be classified as ironworkers. Hopkins had learned that the workers were on site for a few weeks installing fencing. The process involved three phases: demolition, installing temporary fencing, and then installation of the new fence. Hopkins described the new fence as six feet high, with 12-18 inches of the top curved inward, and with spikes at the top of each post to prevent scaling.

Hopkins notified Abel in a letter dated May 10, 2021 that the classification and payment of its employees as laborers instead of ironworkers was in violation of Delaware's Prevailing Wage Law and Delaware's Prevailing Wage Regulations. As a result of Abel's misclassification, it had underpaid nine of its ironworkers on the project in the amount of $6,108.22.

On May 13, 2021, Thomas Erb, a representative for Abel, wrote back to Hopkins disputing his classification of Abel's workers but did not specifically request a hearing before the Secretary as required by the Prevailing Wage Regulations. Able later obtained counsel who directly requested an appeal hearing before the Secretary on behalf of Abel – outside the 15-day period for requesting such a hearing. After reviewing arguments from both parties on whether an appeal was timely filed, the Secretary determined to liberally construe Abel's May 13 *pro se* letter and hold a hearing which was memorialized in a letter to the parties dated September 3, 2021. The Secretary held a hearing on October 7, 2021. In a decision dated October 18, 2021, the Secretary affirmed Hopkins classification of the nine Abel workers on the project as ironworkers and that Abel owed the deficiency amount of $6,108.22. Hopkins did not request civil penalty sanctions and the Secretary did not find that the matter warranted such a penalty. The Secretary reasoned that while the appropriate wage was not paid, the evidence reflects that Abel's failure to pay the correct rate was based on a genuine dispute regarding the applicable rate and not an effort to avoid paying the prevailing wage. The Secretary's decision is final and unappealable.

Abel then filed a Petition for Writ of Certiorari with this Court. Abel argues that Secretary Hubbard's decision must be reversed because (1) the Secretary committed legal error in affirming the OLLE officer's decision to classify Abel's

employees as ironworkers; (2) the Secretary improperly applied the Delaware Administrative Code regulation that requires workers to be paid according to what work they actually performed, not based upon the type of structure erected or built; and (3) that the Secretary proceeded irregularly by failing to hold the Department to the burden of proof pursuant to the Administrative Code.

This Court held oral argument on May 25, 2022. Following oral argument, the parties submitted supplemental briefing. The matter is now ripe for decision.

STANDARD OF REVIEW

"Under Delaware law, a writ of certiorari is essentially a common law writ."[2] Its purpose "is to permit a higher court to review the conduct of a lower tribunal of record."[3] Under this common law writ, this Court has the power to quash or affirm the proceedings and to remand."[4] The "threshold qualifications for Certiorari review … [are] in particular that the judgment below is final, and that there must be no other available basis for review."[5] The court's review on *certiorari* "involves a review only of errors that appear on the face of the record."[6] *Certiorari* review differs from

---

[2] *Goldberg v. City of Wilmington*, 1992 WL 114074, at *1 (Del. Super. Ct. May 26, 1993); *See also Christiana Town Ctr., LLC v. New Castle County*, 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (citing *Shoemaker v. State*, 375 A.2d 431, 436-37 (Del. 1997); Woolley, *Delaware Practice*, Volume 1 §894. *See e.g.*, *Hundley v. O'Donnell*, 1998 WL 842293, at *3 n.7 (Del. Ch. Dec. 1, 1998).

[3] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2.

[4] *Jardel Co., Inc. v. Carroll*, 1990 WL 18296, at *2 (Del. Super. Ct. Feb. 26, 1990); *State v. J.P. Ct. No. 7*, 1989 WL 31600, at *1 (Del. Super. Ct. April 13, 1989); *Breasure v. Swartzentruber*, 1988 WL 116422, at *1 (Del. Super. Ct. Oct. 7, 1988) (citations omitted).

[5] *Christiana Town Ctr., LLC v. New Castle County*, 2003 WL 22120857, at *1(Del. Super. Ct. Sept. 10, 2003). *See e.g. Adijile, Inc. v. City of Wilmington*, 2004 WL 2827983, at *1 (Del. Super. Ct. Nov. 30, 2004), *aff'd*, 2005 WL 1139577 (Del. May 12, 2005).

[6] *Luby v. Town of Smyrna*, 2001 WL 1729121, at *2 (Del. Super. Ct. Dec. 27, 2001) (citing *Castner v. State*, 311 A.3d 858, 860 (Del. 1973).

appellate review in that an appeal "brings up the case on its merits," while a writ brings the matter before the reviewing court to "look at the regularity of the proceedings." [7] Thus, *certiorari* review "is not the same as review on appeal" because it "is on the record and the reviewing court may not weigh the evidence or review the lower tribunal's factual findings." [8] It is the function of "the agency, not the court, to weigh evidence and resolve conflicting testimony and issues of credibility."[9] Thus, the Court does not consider the case below "on its merits" or "substitute its own judgment for [that] of the inferior tribunal." [10] Instead, the Court's review is limited to considering "the record to determine whether the lower tribunal [:] (a) exceeded its jurisdiction (b) committed errors of law, or (c) proceeded irregularly.[11] A decision "will be reversed on jurisdictional grounds only if the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction."[12] A decision "will be reversed for an error of law … when the record affirmatively shows that the lower tribunal has 'proceeded illegally or manifestly contrary to law.'" [13] Finally, a decision "will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review." [14]

---

[7] *Breasure*, 1988 WL 116422, at *1.

[8] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2 (citing *Reise v. Bd. Of Bldg. Appeals of Newark*, 74 A.2d 271, 274 (Del. 2000).

[9] *Christiana Town Ctr., LLC v. New Castle County*, 2004 WL 1551457, at *2 (Del. Super. Ct. July 7, 2004), *aff'd*, 2004 WL 2921830 (Del. Dec. 16, 2004).

[10] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2; *Breasure*, 1988 WL 116422, at *1.

[11] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2 (citing *Reise*, 746 A.3d at 274).

[12] *Id.* at 2 (citing Woolley, *Delaware Practice*, Volume I §921).

[13] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2 (citing Woolley, *Delaware Practice*, Volume I §939).

[14] *Id.* at *2 (citing Woolley, *Delaware Practice*, Volume 1 §923).

The "burden of persuasion rests upon the party attempting to show that the Board's decision was arbitrary and unreasonable."[15]

## DISCUSSION

Abel advances that Secretary Hubbard proceeded irregularly in failing to consider the burden of proof at the hearing and, thus, failed to create an adequate record for review. The DOL argues that even though Secretary Hubbard did not explicitly indicate that the burden of proof at the Hearing was on the DOL, this was "inferred" by her mention, in her decision, that she makes it in accordance with the PWR. Further, the DOL asserts that Abel fails to cite to any case law providing a requirement that the party with the burden of proof be specifically described in each decision. In their reply, Abel cites to *Konkiel v. Terlemezian*[16] to support its position that the Secretary proceeded irregularly.

In *Konkiel*, this Court reversed the decision of the Justice of the Peace Court, finding that "the JP Court proceeded irregularly in regard to its determination of accounting for whether a 'triable issue of fact' necessitated a trial under 25 *Del. C.* §5710." This Court finds *Konkiel* to be instructive for the present issue.

Here, Abel argues that the Secretary proceeded irregularly because she failed to state which party had the burden of proof at the hearing. Pursuant to 19 *Del. C.*

---

[15] *Christiana Town Ctr., LLC*, 2004 WL 1551457, at *2.
[16] 2022 WL 832034 (Del. Super. Ct. Mar. 21, 2022).

7

§1322-74.3.4 "[t]he burden of proof shall be upon the Department." As correctly noted by Abel, Secretary Hubbard's decision is lacking any mention of which party had the burden of proof. While 19 *Del. C.* §1322-7.1.4.3.4 does not explicitly require a statement be made about the burden of proof and the party upon who it is placed, neither did the statute at issue in *Konkiel* and, regardless, this Court found that the JP Court had proceeded irregularly.

Based on the foregoing, this Court concludes that Secretary Hubbard proceeded irregularly for failing to provide a statement as to which party had the burden of proof. The record is *not* adequate for review since this Court is unable to determine, based on the record, whether the burden of proof was placed on the appropriate party at the hearing pursuant to the Delaware Administrative Code. For that reason, this Court REVERSES and REMANDS back to the Department of Labor.

Having determined that the matter needs to be remanded, this Court is not required to address the remaining arguments advanced by Able. However, the Court will address these arguments so that the parties can proceed with a clear understanding on what the path forward looks like, to the extent that the Secretary's decision remains "as is" after the burden of proof is properly allocated.

Abel argues that Hopkins failed to apply Department of Labor Regulation §1332-3.1 because he never analyzed the work actually performed by Abel, and that the Secretary committed an error of law by affirming the OLLE's finding. The DOL responds that Abel's proposed "error of law" is really a factual dispute which is not a proper analysis under *certiorari* review. The Court does not agree with the DOL that Abel's proposed "error of law" is really a factual dispute which is not subject to *certiorari* review. In this Court's view, the issues as framed by Abel are errors of law subject to review. Having said that, it is this Court's view that the Secretary did not commit an error of law.

In her decision, Secretary Hubbard explained:

> In reviewing the evidence of the case, including the testimony and documentary evidence, no abuse of discretion or clear error of law is found. The OLLE determined that the ironworker rate applied from its on-site investigation of the work, from the definitions of laborer and ironworker in the Classification Book, and after determining that the fencing is security fencing and thus excluded from the definition of laborers.[17]

29 Del. C. §8503(7) sets forth that the Secretary has the power, duty, and function "[t]o establish and to promulgate such rules and regulations governing the operation of the Department as may be deemed necessary by the Secretary and which are not inconsistent with the laws of this State." Pursuant to §8503(7), the

---

[17] *See* Exhibit 1 to Opening Brief of Petitioner Abel Fence, LLC, at 6.

Department of Labor promulgated 19 Del. C. §1322 to implement the provisions of

29 Del. C. §6960 which reads:

> The specifications for every contract or aggregate of contracts relating to a public works project in excess of $500,000 for new construction (including painting and decorating) or $45,000 for alteration, repair, renovation, rehabilitation, demolition or reconstruction (including painting and decorating of buildings or works) to which this State or any subdivision thereof is a party and for which the State appropriated any part of the funds and *which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Delaware Department of Labor, Division of Industrial Affairs, to be prevailing in the county in which the work is to be performed.*[18]

Regulation 1322.3.1 is the relevant regulation for this matter. As correctly noted by Abel, §1322.3.1 requires that "[la]borers and mechanics are to be paid the appropriate wage rates for the classification of work actually performed, without regard to skill." In other words, workers are to be paid according to the tasks they do. However, §1322.3.1 also sets forth that the "[d]efinitions for each classification are contained in a separate document entitled, 'Classifications of Workers Under Delaware's Prevailing Wage Law.' Workers shall be classified by the Department of Labor." Regulation 1322.3.1 allows the OLLE to classify workers by utilizing the Classification Booklet. The Booklet is not inconsistent with Regulation 1322.3.1. The two documents are meant to work in harmony with each other. The Booklet is

---

[18] 29 *Del. C.* §6960(a) (emphasis added).

10

expressly permitted by the regulation and allows for further clarification of the appropriate classification. The Booklet provides that to the extent that a fence is a security fence that the appropriate classification is ironworker rather than laborer. The Regulation and Booklet when examined together make it clear that the OLLE in analyzing the work being performed is permitted to not only look at the work actually being performed but what is involved with the work (i.e., a security fence).

In the instant case the OLLE relied on the work he saw being performed during his on-site visits, and how that work matched the definitions set forth in the Classification Booklet. The OLLE determined that the purpose of the fence was security. The Secretary's decision affirming this conclusion was not an error of law.

Hopkins recognized that some work may not have been ironwork. However, Hopkins was hamstrung in his analysis because of Abel's actions. The OLLE requested the daily logs from Abel which Abel was required to keep.[19] The logs were either not received or did not contain sufficient detail for Hopkins to further breakdown the work as between laborer or ironworker. Thus, the OLLE was only able to rely on what he observed during his site visits. Based on the OLLE's site visits in conjunction with the definitions set forth in the Classification Booklet, he determined the appropriate wage rate to be that of ironworker. This Court finds that the OLLE's determination process to be appropriate based on the relevant statutory

---

[19] 19 *Del. C.* § 1322 at 7.1.1.3.3.

and regulatory provisions discussed herein and the Classification Booklet. Secretary Hubbell did not commit legal error in affirming Hopkins.

<u>CONCLUSION</u>

For the foregoing reasons, the Secretary of Labor's decision is REVERSED and REMANDED to the Department of Labor.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge.